CHASE NAT. BANK OF CITY OF NEW YORK v. WABASH RY. CO. et al.

No. 12099.

District Court, E. D. Missouri, E. D.

Oct. 14, 1943.

Carleton S. Hadley, of St. Louis, Mo., General Counsel for Wabash Railroad Co.

Homer Hall and J. S. Fathman, both of St. Louis, Mo., for Wabash Ry. Co.

Hennings, Green, Henry & Evans and Robert D. Evans, all of St. Louis, Mo., and Russell L. Snodgrass and Louis J. Morman, Jr., both of Washington, D. C., for Reconstruction Finance Corporation.

Nagel, Kirby, Orrick & Shepley and Allen C. Orrick, all of St. Louis, Mo., and Milbank, Tweed & Hope and Arthur A. Gammell, all of New York City, for Chase Nat. Bank of City of New York.

Larkin, Rathbone & Perry and Hovey C. Clark, all of New York City, for Central Hanover Bank & Trust Co.

Thompson, Mitchell, Thompson & Young and Guy A. Thompson, all of St. Louis, Mo., and Humes, Buck, Smith & Stowell and Irwin L. Tappen, all of New York City, for New York Trust Co.

Taylor, Chasnoff & Willson and Jacob Chasnoff, all of St. Louis, Mo., and Chadbourne, Hunt, Jaeckel & Brown and Alfred H. Phillips, all of New York City, for Chemical Bank & Trust Co.

Anderson, Gilbert, Wolfort, Allen & Bierman and Roscoe Anderson, all of St. Louis, Mo., and Dunnington, Bartholow & Miller and William H. Radebaugh, all of New York City, for Central Hanover Bank & Trust Co. and others.

Polk & Williams and Charles P. Williams, all of St. Louis, Mo., and Carter, Ledyard & Milburn and John P. Allee, all of New York City, for Manufacturers Trust Co.

. Fordyce, White, Mayne, Williams & Hartman, Thomas W. White, and G. Carroll Stribling, all of St. Louis, Mo., and Winthrop, Stimpson, Putnam & Roberts and Eduardo Andrade, all of New York City, for group of insurance companies.

Bryan, Williams, Cave & McPheeters and Crawford Johnson, all of St. Louis, Mo., and Root, Clark, Buckner & Ballantine and William P. Palmer, all of New York City, for Protective Group for

Wabash Ry. Co. Refunding and General Mortgage Bonds.

Simpson, Thatcher & Bartlett and Hamilton C. Rickaby, all of New York City, for Stockholders Protective Committee.

MOORE, District Judge.

The early history of this proceeding is reviewed in the opinion of the late District Judge Charles B. Davis filed August 25, 1941, approving a Plan of Reorganization of Wabash Railway Company formulated by Norman B. Pitcairn and Frank C. Nicodemus, Jr., receivers, in compliance with an order of this court. Chase National Bank of the City of New York v. Wabash Railway Company and others, D.C., 40 F.Supp. 859.

On June 29, 1942, Judge Davis entered an order reciting the institution of the proceeding by the T. J. Moss Tie Company as a general creditor, the subsequent defaults in the payment of interest and principal due on various issues of mortgage bonds, and the institution consequent thereon of foreclosure proceedings by the several mortgage trustees and the consolidation of causes and ultimate sale on December 1, 1941, of the mortgaged properties and the receivership estate, and the subsequent transfer thereof to Wabash Railroad Company, in consummation of the reorganization and directing that the clerk remove each of the constituent causes from the court docket as concluded cases but subject to the reservations of jurisdiction contained in prior orders and decrees, and further directing the receivers to continue in office until the further order of the court.

Afterwards, on July 11, 1942, the receivers filed their report of the closing of the reorganization and in connection therewith filed counterpart originals of essential reorganization documents, including the deed of John S. Leahy and others, embracing properties sold at the foreclosure sale, and the indentures securing the new indebtedness created in reorganization; and on November 11, 1942, the District Judge entered two further orders—one providing for the approval and confirmation of the reports and accounts theretofore filed by the receivers, the other for the discharge and release of the receivers and the surety on their bond for any future liability thereon.

There yet has been no order discharging and releasing the receivers who by the terms of the order of June 29, 1942, already mentioned, are continued in office until the further order of the court.

The question now arises whether the reorganization in all of its multitudinous mechanical details has progressed so far toward completion as to make it practicable and desirable to grant the receivers their final discharge and release. The late N. S. Brown, General Counsel for the receivers, who died on September 17, 1943, had prepared at the direction of Judge Davis an order providing for the discharge and release of the receivers from all further duties of their office as receivers, except that they were to be empowered to take any action that might be deemed necessary to enforce any right which by reason of nonassignability had not passed to and become enforceable by Wabash Railroad Company under the master's deed or to complete and conclude an unfinished transaction that may have arisen during the course of the receivership.

In accordance with the practice in equity reorganizations of this character an appearance has been entered by Wabash Railroad Company and it has entered into possession and proprietorship of what formerly constituted the receivership estate and is performing all of the duties and discharging all of the obligations of the receivers to the extent, if at all, that they may remain incomplete. Hanlon v. Smith and others, C.C., 175 F. 192.

The court is of the opinion that it is proper at this time to enter an order discharging and releasing the receivers from further responsibility but preserving their official status to the extent necessary to enable them to take any action deemed appropriate to perfect or further assure the title of Wabash Railroad Company to any property or interest to which it may be entitled as an incident of the reorganization.[1]

---

1 Following is the text of an exceptive provision which may be included in the proposed order: " * * * if in their judgment there is any item of property or any right, tangible or intangible, included in the assignment and transfer (sometimes referred to as the Special Master's Deed) made by John S. Leahy, as Special Master, and others (including said Receivers) to Wabash Railroad Company, dated as of December 31, 1941, or intended to be included therein, which is not in law subject to assignment and transfer or which, if

This conclusion is supported by reason and authority.

It is sufficient to cite a well-considered decision of the Court of Appeals of Kentucky rendered in a somewhat analogous situation (Jennings v. Fidelity & Columbia Trust Co. and others, 240 Ky. 24, 41 S.W. 2d 537, 542). In that case the lower court had approved a plan of reorganization for a banking institution and had discharged its receivers by an order containing reservations, one of which was a reservation of authority to the receivers to bring and maintain legal proceedings for the enforcement of certain causes of action. The authority of the lower court to discharge receivers except completely and unconditionally was challenged in the Court of Appeals of Kentucky. The following is from the per curiam opinion: "The argument that the court may not discharge the receiver in part and retain his services for a limited purpose is lacking in substance. The power of the receiver over the property surrendered is extinguished, but control may be reserved over other property or rights, which require further action. The receiver may be retained for a special purpose, without requiring him to serve for all purposes. The facts and exigencies of each particular case must determine how far the objects of the receivership have been attained. It may be concluded in part and continued as to any unsettled subjects of the receivership. The matters yet remaining for the receiver to do are subject to the supervision and control of the court, but that does not affect or impair the right or duty of the court to release the property not involved in the further work of the receiver, and to discharge the receiver pro tanto."

To what extent, if at all, the receivers may be called upon to exercise reserved authority of the scope and character that has been proposed is necessarily conjectural. Every effort has been made to vest in Wabash Railroad Company every form of property, real, personal and mixed, corporeal and incorporeal, heretofore held either by the receivers or by Wabash Railway Company or any predecessor company. Undoubtedly this result has been substantially achieved. It is nevertheless true that this receivership has covered a period of more than ten years in which, as shown by the receivers' monthly reports, $737,383,114.04 has passed through the receivership accounts, and it is not unlikely that rights have accrued in favor of the receivers which are enforceable by them alone and may not be the proper subject of an instrument of assignment or transfer or which for some technical reason may not have passed under the deed of the special master. A variety of conditions may be visualized under the interstate commerce laws, under the federal and state tax laws and under the maritime laws where the receivers may reasonably be asked to give some instrument in addition to what has already been delivered to Wabash Railroad Company in order to confirm its right of possession or title to a vital asset of which it is the equitable owner under the Plan of Reorganization. In fact, such requests have been made. For example, the receivers quite recently were required to execute bills of sale covering certain ferry boats which had not passed to Wabash Railroad Company under the special master's deed because it did not meet certain specific requirements of the Revised Statutes of the United States relating to bills of sale of enrolled vessels. It is a proper measure of precaution to reserve to the receivers the authority to do these things. Otherwise they should be discharged and relieved with a fitting expression of the appreciation of the court.

Although Judge Davis handled this case from its inception in 1931 until his death in 1943, I am generally familiar with the receivership, its progress, the operation of the railroad by the receivers, and the

---

subject to assignment and transfer, is not effectively assigned and transferred by said Special Master's Deed, then and in each and every such case the said Receivers shall be and they hereby are empowered to take any and all such action and institute any and all such proceedings as may in their judgment be proper in the premises for the protection of the interests of the Receivership Estate and Wabash Railroad Company, the assignee of the purchasers at foreclosure sale, and are empowered generally to execute and deliver any instruments deemed necessary or proper to complete or conclude any unfinished transaction that may have arisen during the course of the receivership and further to assure and confirm the title of Wabash Railroad Company to any and all property to which it may be legally or equitably entitled as successor in reorganization of Wabash Railway Company."

reorganization. Walter S. Franklin and Frank C. Nicodemus, Jr., the original receivers, and Norman B. Pitcairn, who succeeded Mr. Franklin as receiver in the early years of the proceedings, were most helpful to and co-operative with this court, and no small part of the credit for the successful handling and termination of the receivership rightfully belongs to them. This court commends the receivers for their conscientious devotion to their many arduous duties, their able supervision of the railroad, and their invaluable aid in the reorganization throughout the period of receivership. In so doing, I am also restating the views of Judge Davis as expressed to me on frequent occasions.

Let counsel for Wabash Railroad Company submit an order in conformity with the views herein expressed.